IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
SPRINGFIELD DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>JAYVONNIE DELT, )<br>)<br>Defendant. ) | Case No. 15-30014 |

OPINION

RICHARD MILLS, United States District Judge:

Jayvonnie Delt seeks compassionate release under 18 U.S.C. § 3582(c)(1)(A).

He bases the motion on his lengthy sentence and the particular circumstances underlying the sentence, the recent changes to mandatory sentencing brought about by the First Step Act and the medical risk he faces due to his serious chronic asthma, which may increase his risk for severe illness from COVID-19, all of which he alleges present extraordinary and compelling reasons to reduce his sentence to time served.

In addition to the amended motion for compassionate release and attachments thereto, the Court has considered letters from the Defendant [d/e 45] and his fiancé, Alae Stewart [52], in support of the motion.

I. BACKGROUND

In his motion, the Defendant notes that in December 2015, United States District Judge Sue E. Myerscough held a hearing concerning his plea agreement. The plea agreement was reached pursuant to Federal Rule of Criminal Procedure 11(c)(1)(C) and specified that Defendant would be sentenced to 15 years in prison. At the time, the Defendant was 25.

At the December 14, 2015 hearing Judge Myerscough stated, "I cannot in good conscience sentence this Defendant to 15 years in Federal prison given his history, his lack of a criminal history, and the additional facts set forth in the presentence report." [Doc. No. 49, at 2]. Judge Myerscough eventually recused herself and the case was reassigned to the undersigned.

Without the plea agreement, the Defendant faced a mandatory minimum of 35 years based on the charges and sentencing rules then in existence. This Court accepted the plea agreement and a sentencing hearing was held on April 13, 2016. In asking the Court to accept the plea agreement, Defense Counsel stated:

> The proposed sentence in the plea agreement is more than the guideline range as of the counts that he pleaded to, [but] if those other counts would not have been dismissed, he, unfortunately, would have been looking at a much, much longer sentence. And frankly, that's why he's entered into the plea agreement, because his other alternative would be to go to trial, and if he lost, he would be facing a very long mandatory sentence that the Court had no discretion but to impose . . . It's a longer sentence that Mr. Delt . . . obviously wish[es] was occurring. But under the confines of the mandatory

punishments that Congress has set forth, there's really no alternative. Doc. No. 50 at 7. Following his guilty pleas to Conspiracy to Distribute 100 or more Grams of a Substance Containing Heroin in violation of 21 U.S.C. §§ 846, 841(a)(1), (b)(1)(B) (Count 1), and Possession of a Firearm in furtherance of a Drug Trafficking Crime in violation of 18 U.S.C. § 924(c) (Count 7), the Court imposed the 15-year imprisonment term.

Prior to this case, the Defendant's only previous non-traffic offense had been a misdemeanor conviction for damage to property for which he was sentenced to three months of supervision and 20 hours of public service. He had one criminal history point based on the misdemeanor conviction.

The Defendant is a 28 year old African-American male and has been in custody for more than six years. According to the Bureau of Prisons (BOP) website, the Defendant is at Bastrop FCI and has a projected release date of September 20, 2028.

The BOP website states that 210 federal inmates and three BOP staff members have died of COVID-19. www.bop.gov/coronavirus (last accessed January 31, 2021). There are 3,117 federal inmates and 1,782 BOP staff who are currently positive for COVID-19. *Id*. Currently, 42,671 inmates and 4,321 staff have recovered. *Id*. There are a total of 123,221 inmates at all BOP-managed institutions, along with approximately 36,000 BOP staff. *Id*.

Bastrop FCI has 12 inmates and 36 staff members who are currently positive for COVID-19. *Id.* There has been one inmate death at Bastrop due to COVID-19. *Id.* The website reports that 452 inmates and 6 staff members at Bastrop have recovered. *Id.* Bastrop FCI has 1,237 inmates, including 100 at the Camp. www.bop.gov/locations/institutions/bas (last accessed January 31, 2021).

## II. DISCUSSION

### (A)

Under the First Step Act signed into law on December 21, 2018, defendants may now file motions for compassionate release after first exhausting administrative remedies within the BOP. *See* 18 U.S.C. § 3582(c)(1)(A). The law provides the sentencing judge with jurisdiction to consider a defense motion for reduction of sentence based on "extraordinary" or "compelling" reasons whenever "the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf," or after "the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier[.]." *See* 18 U.S.C. § 3582(c)(1)(A). If properly invoked by the Government, the exhaustion requirement must be enforced. *See United States v. Sanford*, __ F.3d __, 2021 WL 236622, at *3 (7th Cir. Jan. 25, 2021).

The Defendant's motion represents that he made a request for compassionate release in writing to the Warden of his facility on June 22, 2020, which was more than 30 days before filing the amended motion. Accordingly, the Defendant has met the statutory exhaustion requirement and his motion is ripe for review.

The First Step Act does not say what "extraordinary and compelling reasons" warrant a sentence reduction, but the compassionate release statute directs the Court to consider the sentencing factors of 18 U.S.C. § 3553(a) when deciding compassionate release motions. *See* 18 U.S.C. § 3582(c)(1)(A).

Because the Sentencing Guideline policy statement has not been updated since passage of the First Step Act to reflect that defendants (and not only the BOP) may move for compassionate release, there is no "applicable" policy statement concerning the expanded compassionate-release provision. *See United States v. Gunn*, 980 F.3d 1178, 1180 (7th Cir. 2020). In exercising discretion, a court may rely on U.S.S.G. § 1B1.13 to provide guidance on whether "extraordinary and compelling reasons" may warrant a sentence reduction. *See United States v. Weatherspoon*, 2020 WL 3803035, at *3 (S.D. Ind. July 7, 2020) (citations omitted). The applicable guideline instructs that the Court should consider the sentencing factors set forth in 18 U.S.C. § 3553(a) when deciding a motion for compassionate release and the Court should not grant a sentence reduction if the defendant poses a risk of danger to the community, as defined in the Bail Reform Act. *See* U.S.S.G. §

1B1.13. The policy statement provides examples of "extraordinary and compelling reasons" in the application notes. These examples generally fall into four categories based on a defendant's (1) terminal illness, (2) debilitating physical or mental health condition, (3) advanced age and deteriorating health in combination with the amount of time served, or (4) compelling family circumstances. U.S.S.G. § 1B1.13 comment. n.1 (A)-(C).

The commentary also includes a fifth catch-all provision for "extraordinary and compelling reasons other than, or in combination with, the reasons described in subdivisions (A) through (C)," as determined by the Bureau of Prisons. The policy statement was last updated in November 2018 before the First Step Act was passed.

On April 3, 2020, the Attorney General made the finding that emergency conditions are materially affecting the functioning of the BOP, thereby allowing the BOP Director to review all inmates for home confinement. The Attorney General's Memorandum explained that "inmates with a suitable confinement plan will generally be appropriate candidates for home confinement rather than continued detention at institutions in which COVID-19 is materially affecting their operations." There were calls from legal experts for the Attorney General to expand the home confinement program even further. Moreover, multiple United States Senators voiced concern over BOP's attempts to curb the spread of the virus and their non-responsiveness to the call to release medically vulnerable inmates.

(B)

Certainly, the COVID-19 pandemic is in and of itself an extraordinary and unprecedented event in our lifetimes. "The spread of the novel coronavirus, more specifically COVID-19, has presented extraordinary and unprecedented challenges for the nation and poses a serious issue for prisons." *United States v. Coles*, 2020 WL 1976296, *6 (C.D. Ill. Apr. 24, 2020). Over 200 individuals in BOP custody have died from COVID-19. However, "the mere existence of COVID-19 in society and possibility that it may spread to a particular prison alone cannot independently justify compassionate release." *United States v. Raia*, 954 F.3d 594, 597 (3d Cir. 2020). "Perhaps a prisoner could satisfy the extraordinary and compelling reasons requirement by showing that his particular institution is facing a serious outbreak of COVID-19 infections, the institution is unable to successfully contain the outbreak, and his health condition places him at significant risk of complications should he contract the virus." *United States v. Melgarejo*, 2020 WL 2395982, at *3 (C.D. Ill. May 12, 2020); *see also United States v. Johnson*, 2020 WL 2573239, at *4 (C.D. Ill. May 21, 2020).

The Defendant suffers from serious chronic asthma. According to the Centers for Disease Control and Prevention ("CDC"), individuals with moderate to severe asthma might be at an increased risk for severe illness from COVID-19.

www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last accessed January 31, 2021).

The Defendant also notes that, according to the CDC, individuals who are among racial and ethnic minority groups face "a disproportionate burden of illness and death" due to COVID-19. One reason for this is that "[r]acial and ethnic minority groups are **over-represented in jails, prisons, and detention centers**, which have specific risks due to congregate living, shared food service, and more." (emphasis in original). Moreover, members of minority groups often do not receive the same quality of health care as white individuals.

The Defendant has actively sought rehabilitation classes while at BOP. He has taken a number of self-improvement classes and has also received his GED.

At the time of the Compassionate Release Recommendation Report [Doc. No. 47], on June 23, 2020, the Defendant was being housed in the Special Housing Unit for disciplinary action. The Report lists nine disciplinary actions during his incarceration between July 23, 2017, and April 23, 2020. On three occasions, the Defendant appeared disoriented and admitted to smoking tobacco/K-2. On two occasions, the Defendant denied smoking K-2, despite being disoriented and unable to stand. Most recently, in December 2019, the Defendant was sanctioned for

bribing an official or staff member and in April 2020, the Defendant was sanctioned for interfering with security devices.

At the time of the Government's response to the motion for compassionate release, the Defendant was in the Segregated Holding Unit for disciplinary actions and was classified as a high risk of recidivism.

(C)

In support of his motion, the Defendant claims that the 15-year sentence is extraordinary "given his history, his lack of a criminal history, and the additional facts set forth in the presentence report." The imprisonment term was so extraordinary that one federal judge recused herself rather than impose the sentence contained in the plea agreement. This Court noted that it lacked any discretion and had to impose the negotiated imprisonment term upon accepting the Defendant's guilty plea.

The situation at Bastrop FCI appears to be better than it previously was given the number of current positive cases among inmates compared with the number of inmates who have recovered from Covid-19. There is a relatively high number of staff who are currently positive. Obviously, the numbers at most institutions have fluctuated significantly over the last several months.

In determining not to accept the plea agreement, Judge Myerscough found a 15-year term to be longer than necessary "given his history, his lack of criminal history, and the additional facts set forth in the presentence report." At sentencing, the guideline range was calculated to be 120 to 131 months.

In asserting that a reduction under the First Step Act is appropriate, the Defendant attaches an Order of United States District Judge Robert W. Pratt of the Southern District of Iowa in *United States v. Nicholson*, no. 09-cr-00058-RP-CFB (S.D. Iowa, June 6, 2020), granting compassionate release. Judge Pratt described how lengthy periods of incarceration which result from mandatory minimums can devastate families which can constitute an extraordinary and compelling circumstance.

The Defendant claims that upon considering the factors in § 3553(a)(2)(A-D), little can be gained by a few more years of prison. If a 6-year sentence does not deter him, then a 15-year term will not. While his crimes were serious, he does not have a pattern of criminal activity. The Defendant is taking advantage of opportunities at education and rehabilitation. He is wiser and more educated than he was 6 years ago. He alleges these efforts at self-improvement are more likely to succeed if he is released at a young age.

The Defendant further contends that sentencing factors such as providing just punishment and promoting respect for the law also weigh in favor of compassionate release. Those factors are not consistent with locking up a poor person for 15 years for a first felony offense.

(D)

Upon reviewing the record, the Court is unable to find that compassionate release is warranted based on any underlying health conditions. As previously noted, the Defendant's chronic asthma might be an aggravating factor if he were to become infected with COVID-19. However, he does not have any conditions that would necessarily place him at a higher risk. He is also at an age where he is less likely to suffer severe effects.

The Court recognizes some studies have shown that African-Americans have experienced worse health outcomes after contracting COVID-19. However, there is no physiological basis for this result based solely on skin color. The CDC has stated there are a number of socioeconomic factors which might explain this troubling situation, including the prevalence of underlying conditions and problems with healthcare access. This Defendant appears to be in good health and has none of the underlying conditions that the CDC has definitively identified as placing him at risk for more serious illness. Moreover, the Court is certain that Defendant will receive

the same level of medical care in the BOP as any other inmate, regardless of skin color.

The Defendant has served a little more than 40% of the sentence that was imposed in 2016. This case involved a large amount of heroin and the possession of three firearms in relation to his drug trafficking activities. The Defendant was initially arrested for manufacture of heroin in May 2014. After posting bond, the Defendant was again arrested in November 2014 for selling heroin and having a firearm.

The Court recognizes that a number of district courts both within and outside the Seventh Circuit have held--following passage of the First Step Act--that courts may now find extraordinary and compelling reasons to grant compassionate release and/or modify sentences that were longer than necessary because of pre-First Step Act stacked, mandatory minimums. In *United States v. McCoy*, 981 F.3d 271 (4th Cir. 2020), the Fourth Circuit upheld a reduction of pre-First Step Act sentences that were imposed under § 924(c), noting the district court's consideration of those sentences as an "extraordinary and compelling" reason for release was not inconsistent with any policy statement because no new policy statement had been issued. *See id*. at 275. The court further held that courts could consider the post-First Step Act level of punishment under § 924(c) on an individual basis in determining whether compassionate release was warranted for a defendant. *See id*.

As the Seventh Circuit observed in *Gunn*, a court's discretion is not limited in the same manner as it was prior to the First Step Act in determining if a modification is appropriate under § 3582(c)(1)(A).  *See Gunn*, 980 F.3d at 1180.

Based on the foregoing, it appears the Court is authorized to find that the disparity between the old and new § 924(c) penalties can amount to an extraordinary and compelling reason to reduce a sentence.

Upon considering the entire record, however, the Court does not believe that extraordinary and compelling reasons exist which would warrant reducing the Defendant's sentence.  The Defendant has not yet served half of his sentence and has no conditions that have been determined to place him at higher risk for complications if he were to contract COVID-19.

Additionally, although the Court recognizes that Defendant has a very limited criminal history—which is unusual for a Defendant serving a lengthy federal sentence--the Defendant's disciplinary record over a relatively short period of time in BOP custody cannot be ignored.  The Court earlier noted that Defendant had nine disciplinary infractions in less than three years—several of which involved using K-2 or "spice."  The BOP found him to be a high risk level for recidivism if he were released.  Although the Defendant has certainly made progress in the form of education and vocational programs, his disciplinary record is very troubling.

The offenses in this case were very serious. The Defendant trafficked in large amounts of heroin and possessed a firearm in furtherance of that activity. Those acts present a serious risk of violence. Other sentencing factors which weight against compassionate release include deterrence and protecting the public from further crimes.

For all of these reasons, the Court does not believe that compassionate release is appropriate in this case.

Ergo, the Amended Motion for Compassionate Release of Defendant Jayvonnie J. Delt [d/e 51] is DENIED.

The Clerk will terminate the Defendant's *Pro Se* Motion for Compassionate Release [d/e 44].

ENTER: February 2, 2021

    FOR THE COURT:

                              /s/ *Richard Mills*
                              Richard Mills
                              United States District Judge